# Lewis W. Shallcross, Plff. in Err., v. Francis Mawhinney.

Where one, acting as the agent of the defendant in an execution, to purchase the real estate under levy, for the defendant, purchases in his own name and for himself, he will be held to be a trustee *ex maleficio;* and the defendant in the execution can recover the property in an action of ejectment.

(Argued January 17, 1887.    Decided January 31, 1887.)

January Term, 1886, No. 260, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.    Error to Common Pleas No. 1 of Philadelphia County to review a judgment on a verdict for plaintiff in an action of ejectment. Affirmed.

---

Cited in Mawhinney v. Shallcross, 10 Pa. Co. Ct. 102, 104, 48 Phila. Leg. Int. 264.

NOTE.—For the subsequent proceedings in this case, see Mawhinney v. Shallcross, 10 Pa. Co. Ct. 102, 48 Phila. Leg. Int. 264.

A purchaser at a sheriff's sale cannot be converted into a trustee *ex maleficio,* unless there be fraud at the time of sale. Huffnagle v. Blackburn, 137 Pa. 633, 20 Atl. 869; Feely v. Hoover, 130 Pa. 107, 18 Atl. 611; MaGuire v. Price, 132 Pa. 213, 19 Atl. 421, 155 Pa. 60, 25 Atl. 828; Evans v. McKee, 152 Pa. 89, 25 Atl. 148.    Nor can a resulting trust *ex maleficio* be raised in such case unless the purchase money was paid by the party claiming it. McCall v. Rourke, *post,* 260. A mere promise to reconvey upon payment is not enough. Silliman v. Haas, 151 Pa. 52, 25 Atl. 72. The proof to establish such trust must be clear, explicit, and unequivocal. Silliman v. Haas, 151 Pa. 52, 25 Atl. 72.    But where fraud is shown, as in Shallcross v. Mawhinney, the trust may be enforced.    Kramer v. Dinsmore, 152 Pa. 264, 25 Atl. 789; Budd v. Finley, 151 Pa. 540, 25 Atl. 129.

On the trial of the case before BIDDLE, J., evidence was offered by the plaintiff to establish the following facts:

In July, 1878, a creditor issued execution against Mawhinney and levied upon the land in dispute. Before the sheriff's sale, Mawhinney applied to Amos Shallcross, a brother of the defendant, for advice, and it was agreed that the latter would attend to the matter for the former.

On the day of sale, Shallcross went to the office of Hanneshotz, attorney for the plaintiff in the execution under which the property was to be sold, for the purpose of compromising the matter if possible; he returned and told Mawhinney that Hanneshotz would take $275 for the judgment, and said: "I will settle if you say so," and then Mawhinney said: "Do it."

Shallcross went back to Hanneshotz's office, returned in a few minutes and said: "I have settled it for $275." Shallcross then said: "I think it would be better to let the sale go on, and buy the property in for you." Mawhinney said: "You ought to know best, for I know but little about it; do it if you think best." They then went into the sale, where the property was knocked down to Shallcross for a nominal sum, no one else bidding. He signed the sheriff's sale book "Amos Shallcross, agent for Lewis Shallcross" (his father). On June 9, 1879, some ten months after the sale, a sheriff's deed was made to Lewis W. Shallcross, the defendant.

The defendant denied the allegations of the plaintiff, and testified that he took the title in himself, to protect himself as a creditor of Mawhinney. He held several liens against the property, paid the purchase money himself and made improvements. On the trial, the plaintiff's counsel made the following offer, which was admitted under objection:

"I offer to prove that Mr. Shallcross acted as agent or attorney of Mr. Mawhinney, induced him to let the property be sold under the agreement that he would have them knocked down to Mr. Mawhinney, Mr. Shallcross to buy them in for him in his (Mawhinney's) name. I was going to follow that up by claiming that Mr. Lewis W. Shallcross, the defendant, took the title in his own name through the fraud of his brother, Mr. Amos C. Shallcross. I will agree to the two, and will prove it. Pretty soon the witnesses will take the stand, and will show their knowledge of that fact, that it was Mr. Mawhinney's property."

The jury rendered the following verdict: "Verdict for plain-

tiff upon his tendering to defendant the sum of $2,293.02."
Judgment was entered by the plaintiff on the verdict, *ex parte,*
in the prothonotary's office, without the tender.    The refusal of
the court to strike this off is reported in 2 Pa. Co. Ct. 164.

The assignments of error specified, *inter alia,* the admission
of the evidence and the entry of judgment on the verdict.

*Lewis Stover,* for plaintiff in error.—The offer amounts to
this, that Shallcross promised to buy in the property for
Mawhinney, and he broke his promise by buying it in for him-
self.    "A refusal to fulfil the agreement is no more than the
violation of a parol agreement, and equity will not decree the
purchaser to be a trustee."    Phillips v. Hull, 101 Pa. 570;
Fricke v. Magee, 10 W. N. C. 50.

When the purchaser at a sheriff's sale promises to hold for the
debtor and afterwards refuses to comply with his engagement,
the fraud, if any, is not at the sale.    Kellum v. Smith, 33 Pa.
158.

If the agent pays his own money, an express trust (in the ab-
sence of fraud) will not be permitted to be shown.    2 Reed,
Stat. Fr. par. 870, and cases cited.

*D. Webster Dougherty* and *Daniel Dougherty,* for defendant
in error.—In Gilbert v. Hoffman, 2 Watts, 66, 26 Am. Dec. 103,
plaintiff alleged that previous to the sale Hoffman had fraudu-
lently misrepresented the quality and condition of the land, so
as to enable himself to purchase at a low price, which he did.
This court held that where a purchaser purchases by fraud, re-
covery can be had without a tender of the money paid to the
sheriff.

So in McKennan v. Pry, 6 Watts, 137, where it was shown
that defendant was enabled to purchase the property at sheriff's
sale by telling people he wished they would not bid against him,
as he was buying the land for the widow and children, this court
held that he was affected with a trust in their favor.

In McCaskey v. Graff, 23 Pa. 321, 62 Am. Dec. 336, plain-
tiff maintained an action of ejectment against defendant, on the
ground that he was enabled to purchase the property at sheriff's
sale by means of fraudulent misrepresentation that he was going
to buy it for the family.

In Boynton v. Housler, 73 Pa. 453, where a decedent's estate

was to be sold on execution, the widow having an interest to the extent of his exemption, her friends having arranged to purchase the land for her, the execution creditor agreed with her that if they would not bid against him he would convey a portion to her. They refrained from bidding and he bought the property at an undervalue. Held, he was a trustee *ex maleficio* for the widow. Wolford v. Herrington, 74 Pa. 311, 15 Am. Rep. 548, is similar to the case in hand.

In Seichrist's Appeal, 66 Pa. 237, it was said that although no one can be compelled to part with his own title, by force of a mere verbal bargain, yet when he procures title from another, which he could not otherwise have obtained except by a confidence reposed in him, if he abuses the confidence reposed in him, he is converted into a trustee *ex maleficio*.

Where an agent took title in his own name, for his own use, the act at once turned him into a trustee *ex maleficio*. Squires's Appeal, 70 Pa. 268.

The principle has also been affirmed in numerous other cases. Among others may be cited: Foulk v. M'Farlane, 1 Watts & S. 297, 37 Am. Dec. 467; Smull v. Jones, 1 Watts & S. 128; Urket v. Coryell, 5 Watts & S. 60; Jackson v. Summerville, 13 Pa. 359; Plumer v. Reed, 38 Pa. 48; Christy v. Sill, 95 Pa. 387.

In Phillips v. Hull, 101 Pa. 571, and Kellum v. Smith, 33 Pa. 158, the fraud on the part of the person sought to be charged with the trust was not the taking of the title in his own name, but in not conveying afterwards.

This was an equitable proceeding; the verdict of the jury was in the nature of a decree of a court of equity, which this court, sitting as a chancellor, has a right to mould in such a manner as to do substantial justice between the parties. Gordonier v. Billings, 77 Pa. 503; Biddle v. Moore, 3 Pa. St. 175; Pendleton v. Richey, 32 Pa. 58; Webster v. Webster, 53 Pa. 161.

Kensinger v. Smith, 94 Pa. 386, is a case precisely similar to this. An action in equitable ejectment was brought against defendant and verdict rendered for the plaintiff for the land in dispute to be released on payment of $1,573.70. This court amended the judgment fixing a time for the payment of the sum found to be due.

PER CURIAM:

The mere refusal to fulfil an agreement to purchase land for another is nothing more than the violation of a parol agreement, and equity will not decree the purchaser to be a trustee. This case however goes further. The land was owned by Mawhinney. It was about to be sold. He applied to the plaintiff in error for counsel and assistance, who advised him to let the sale go on and he would buy the property for him. Mawhinney relied upon this promise and did not bid himself or get any third person to bid for him, but permitted the plaintiff in error to buy it under the arrangement. In now repudiating the agreement after he acquired the land for a nominal sum, he must be held to be a trustee *ex maleficio* for the former owner. McCaskey v. Graff, 23 Pa. 321, 62 Am. Dec. 336; Boynton v. Housler, 73 Pa. 453.

Judgment affirmed.